IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ANTHONY YOUNG,
     Petitioner,

vs.                              Case No.: 5:06cv147/SPM/EMT

JAMES R. McDONOUGH,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

       This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Docs. 12, 21).  Petitioner filed a reply (Doc. 26).

       The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

       The procedural background of this case is undisputed by the parties and established by the state court record.  Following a jury trial in the Circuit Court for Holmes County, Florida, on September 13, 2001, Petitioner was found guilty of one count of sexual battery with a firearm (Doc. 12, Exs. B, C).  He was sentenced on November 13, 2001, to a term of ten (10) years of incarceration to be followed by a period of ten (10) years of probation (*id*., Ex. D).  Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal (First DCA).  The appellate

court affirmed the conviction and sentence per curiam without written opinion on April 29, 2003, with the mandate issuing May 15, 2003 (*id.*, Exs. H, I).  Young v. State, 845 So. 2d 192 (Fla. 1st DCA Apr. 29, 2003) (Table).

On September 22, 2003, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 12, Ex. J at 1–20).  Following an evidentiary hearing, the trial court denied the motion on September 29, 2004 (*id.* at 40–42, 54–116).  Petitioner appealed the decision to the First DCA.  The appellate court affirmed the decision per curiam without written opinion on November 14, 2005, with the mandate issuing January 31, 2006 (*id.*, Exs. M, N).  Young v. State, 919 So. 2d 441 (Fla. 1st DCA Nov. 14, 2005).

On March 3, 2006, Petitioner filed a motion to correct illegal sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Doc. 12, Ex. O at 1–7).  The trial court denied the motion on April 25, 2006 (*id.* at 14).  Petitioner appealed the decision to the First DCA, but then filed a notice of voluntary dismissal of the appeal (*id.*, Ex. P).  On August 31, 2006, the First DCA dismissed the appeal (*id.*, Ex. Q).

Petitioner filed the instant habeas action on April 24, 2006 (Doc. 1 at 6).  Respondent concedes that the petition was timely filed (Doc. 21 at 5).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)    An application for a writ of habeas corpus on behalf of a person in custody
       pursuant to the judgment of a State court shall not be granted with respect to
       any claim that was adjudicated on the merits in State court proceedings unless
       the adjudication of the claim–
       (1)    resulted in a decision that was contrary to, or involved an

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in

Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1]  The appropriate test

in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed.

2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any

issue raised in a federal habeas petition upon which there has been an adjudication on the merits in

a formal state court proceeding.  See Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir.

2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002).  First, the court must ascertain

the controlling legal principles that are clearly established by the Supreme Court at the time of the

---

[1] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002)  (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority."  Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Id. (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting

Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error."  Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."  Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent.  Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence.  See Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

III.   EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas

---

[2]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
            (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in

_____

[3]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"   *Id.*   With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[4]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's

---

[4]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  Id..  A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it

---

[5]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

is more likely than not that no reasonable juror would have convicted him." <u>Schlup</u>, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

A.   <u>Ground one:  "Counsel ineffective by failing to investigate for suppression hearing, unlawful arrest and confession in violation under Extradition Act."</u>

(Doc. 1 at 4).  Petitioner claims that his trial counsel performed deficiently by failing to investigate and discover evidence of the circumstances of Petitioner's being brought from the State of Alabama to the State of Florida, which could have been used to support counsel's motion to suppress Petitioner's statements to authorities in both states.  Petitioner states he gave a statement to Alabama authorities, was arrested in Alabama and tricked by Alabama and Florida authorities into crossing the Florida state line under the belief that he was merely going to have a conversation with the Florida officer, was then arrested by the Florida officer, and subsequently gave him a written statement (*see* Doc. 26 at 7, 10).  Petitioner states that Alabama authorities never advised him of his rights under the Extradition Act, and he did not waive those rights.  Petitioner contends that if his trial counsel had investigated these facts, counsel could have used this as a basis for challenging admission of his statements to authorities in both states.

1.   Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under <u>Strickland</u>, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  It is the petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable and that he suffered prejudice as a result

thereof.  *Id.* at 687.  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

> In determining whether counsel's performance was reasonable, the Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  *Cf.* Engle v. Isaac, 456 U.S. 107, 133–134, 102 S. Ct. 1558, 1574-1575, 71 L. Ed. 2d 783 (1982).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  *See* Michel v. Louisiana, *supra*, 350 U.S. at 101, 76 S. Ct. at 164.

Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Strickland, 466 U.S. at 693.  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

> 2. Federal Review of State Court Decision

Petitioner raised this claim as his first ground for relief in his Rule 3.850 motion (Doc. 12, Ex. J at 7–9). The state court's written opinion identified the <u>Strickland</u> standard as the applicable standard for evaluating claims of ineffective assistance of counsel (*id*. at 41); therefore, Petitioner is entitled to federal relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of <u>Strickland</u>.

Following the evidentiary hearing on the Rule 3.850 motion, the state court made the following factual findings: (1) Petitioner testified that prior to trial he never informed his trial counsel that he believed any improprieties occurred concerning his being turned over to Florida authorities; (2) ample testimony, including the consistent testimony of the Alabama and Florida officers at the hearing on Petitioner's motion to suppress and Petitioner's trial, established that Petitioner voluntarily crossed the state line from Alabama to Florida at a time when Petitioner was not in custody of either State, and (3) issues concerning the legality of Petitioner's post-arrest statement to Florida authorities, including the manner in which Petitioner was brought to Florida, were litigated before the trial judge and resolved in favor of the State (*id*. at 40). Based upon these findings, the court concluded that a motion challenging the failure to follow extradition procedures

would not have been successful (*id*.).  The state court further concluded that Petitioner failed to show

that his post-arrest statement to Florida authorities would have been subject to suppression by virtue

of an improper extradition process (*id*.).  Therefore, even if Petitioner's trial counsel was deficient

for failing to attack the validity of the extradition process, Petitioner failed to establish that he was

prejudiced because he failed to show that the but for the deficiency, the statements would have been

deemed inadmissible (*id*. at 40–41).

         At the state court evidentiary hearing, Petitioner testified that he lived in Slocomb, Alabama

at the relevant time (Doc. 12, Ex. J at 65).  Petitioner testified that he was told that the Geneva

(Alabama) County Sheriff's Department needed to speak with him, and he proceeded to the police

station to speak with Deputy Hall (*id*.).  Deputy Hall told Petitioner that a complaint had been filed

against him and asked Petitioner to show him where the alleged crime occurred (*id*. at 65–66).

Petitioner testified that he and Hall went to the scene, that he was not handcuffed, and that he went

voluntarily (*id*. at 66).  Petitioner further testified that when he showed Deputy Hall where the sexual

encounter with the victim occurred, Hall told him that it occurred in Florida (*id*).  Petitioner testified

that Deputy Hall then contacted authorities in Holmes County, Florida, and told Petitioner that he

(Hall) needed Petitioner to go to Florida (*id*. at 67).  Petitioner claimed that he refused to go to

Florida voluntarily, so Deputy Hall "handcuffed me and threw me in his car and took me back to the

state line" (*id*. at 67–68).  Petitioner initially testified that Deputy Hall walked him over the state line

in handcuffs and then took the handcuffs off, whereupon Deputy Russ of the Holmes County

Sheriff's Office placed handcuffs on him (*id*. at 68–69); however, on cross-examination, Petitioner

testified that Deputy Hall actually drove him, handcuffed, across the Florida line (*id*. at 78).

Petitioner testified that Deputy Hall removed the handcuffs in the presence of Deputy Russ (*id*. at

69).  Petitioner additionally testified that prior to his telling Hall that he would not voluntarily go

to Florida, he had not been handcuffed, and all of his actions had been voluntary (*id*. at 68).[6]

Petitioner testified that his trial counsel was aware that he had been questioned by Alabama

_____

         [6]Later in the evidentiary hearing, Petitioner testified that Deputy Hall took a written statement from him without
advising him of his <u>Miranda</u> rights and despite his request to speak to an attorney (Doc. 12, Ex. J at 75–77); however,
at trial, the State introduced Petitioner's written statement which included an acknowledgment that prior to the statement,
Deputy Hall had advised him of his <u>Miranda</u> rights as described in the statement (Doc. 12, Ex. C at 169–71).

authorities prior to being arrested by Florida authorities, and he never discussed with his trial counsel the specifics concerning how he arrived in Florida (*id*. at 70, 83).

Deputy Russ gave a different account of Petitioner's crossing the state line into Florida. Deputy Russ testified that his office received a call from the Geneva County Sheriff's Office regarding a sexual battery that had apparently occurred in Florida rather than Alabama (*id*. at 101). Deputy Russ drove to the Florida-Alabama border and stopped on the Florida side (*id*.).  Deputy Russ testified that Deputy Hall and Petitioner were in Hall's car located on the Alabama side (*id*. at 101–02).  Deputy Russ testified that Petitioner exited Deputy Hall's car and walked to him (Russ) across the border into Florida (*id*. at 102, 106).  Russ further testified that he did not know if Petitioner was handcuffed when he exited Hall's car, but Petitioner was not handcuffed when he walked to him (Russ) (*id*. at 102).  Russ testified that he did not have to drag Petitioner across the Florida line; Petitioner walked to him, and after informing Petitioner that he was handcuffing him, he handcuffed Petitioner and placed him in his patrol car (*id*.).  Deputy Russ testified that Petitioner never told him that he did not want to come to Florida (*id*. at 102–03).

Deputy Russ' testimony at the post-conviction evidentiary hearing was consistent with his testimony at Petitioner's trial.  At trial, Deputy Russ testified that he met Deputy Hall at the Alabama-Florida state line, and Hall provided him with written statements from the victim and Petitioner (Doc. 12, Ex. C at 178).  Russ testified that Petitioner exited Deputy Hall's patrol car, walked across the state line, and talked to Russ, whereupon Russ arrested Petitioner and placed him in his patrol car (*id*.).

Petitioner's trial counsel, John Roberts, also testified at the evidentiary hearing.  He testified that he had been practicing law for over twenty years at the time of Petitioner's trial (*id*. at 86).  Mr. Roberts testified that Petitioner "never complained about how he was transported from Alabama to Florida," but in any event he did not think that the issue "had any bearing on his particular case as far as it relates to statements that he may have given either to Deputy Hall or Deputy Russ" (*id*. at 87).  Attorney Roberts testified that he filed a motion to suppress Petitioner's statement to Deputy Russ on the ground that Russ had initiated contact with Petitioner after Petitioner had invoked his right to remain silent (*id*. at 88).  Roberts testified that at the suppression hearing, Deputy Russ testified that Petitioner initiated contact with him, and the trial court credited Russ' testimony and

denied the motion to suppress (*id.*).  Attorney Roberts further testified that he became aware of Petitioner's written statement to Deputy Hall through discovery, and the documents showed that Petitioner was advised of his Miranda rights by Deputy Hall at 3:04 p.m., and he wrote a statement at 3:22 pm. (*id.* at 91).

Petitioner's postconviction counsel argued that Mr. Roberts "should have considered extradition in this case" and that such consideration "could have resulted in a different ruling on the admission of any statement, both [the] statement in Alabama but particularly the statement in Florida" (*id.* at 112).  Petitioner's post-conviction counsel admitted he had "no case law" to support the contention that the Alabama statement would have been inadmissible, but argued that the Alabama statement bolstered the Florida statement (*id.* 112–13).  When directly questioned by the judge, Petitioner's counsel also "could not say that" the allegedly improper extradition would have rendered Petitioner's statements to Deputy Russ in Florida inadmissible either, but Petitioner "probably" would have had the advice of an attorney if extradition proceedings had been initiated, and the attorney would have advised Petitioner not to make any statements (*id.* at 113–14).  Counsel also argued that Petitioner would not have been in the custody of Florida officials on the day he made the statement if extradition procedures had been followed (*id.*).

Section 3182 of the Extradition Act provides:

Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear.  If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

18 U.S.C. § 3182.

Petitioner has failed to establish a reasonable probability that the trial court would have suppressed his statements to the Alabama and Florida authorities if his counsel had presented

evidence of the circumstances of Petitioner's presence in Florida, namely, testimony by Petitioner, Deputy Hall, and Deputy Russ.  As noted *supra*, the state post-conviction court found as fact that Petitioner voluntarily entered the State of Florida and was not in the custody of authorities from either State at the time, based upon Russ' testimony that Petitioner walked unrestrained to him from Alabama into Florida.  Petitioner has failed to provide clear and convincing evidence to rebut the presumption that the state court's finding was correct; therefore, this court must defer to the state court's finding.

Furthermore, the trial testimony of Deputy Hall and Deputy Russ, which the state court considered in deciding this post-conviction issue, supports the state court's determination that Petitioner voluntarily entered Florida and was not in the custody of authorities from either State at the time.  At trial, Deputy Hall testified that after he initially interviewed Petitioner, he told Petitioner that he was unsure of where the alleged crime occurred and asked Petitioner if he would be willing to show him (Doc. 12, Ex. C at 171–72).  Hall testified that he and Petitioner went to the scene in a patrol car, and he (Hall) determined that the crime occurred in Holmes County, Florida, so he and Petitioner went back to the police station, and Hall contacted authorities in Holmes County (*id*. at 172).  Deputy Hall testified that he then met an officer from Holmes County at the scene and showed the officer where the crime occurred, and they both determined that the crime definitely occurred in Florida (*id*. at 172, 175).

Deputy Russ testified at trial that Officer Hall took him to the location of the crime, and he (Russ) determined that the crime occurred in Holmes County, Florida (*id*. at 191–92).

Assuming arguendo that Petitioner was detained by Deputy Hall when Hall handcuffed him, placed him in his patrol car, and drove him to the state line to meet Deputy Russ, Petitioner's detention lasted only until Deputy Hall and Deputy Russ completed their investigation regarding the jurisdiction where the crime occurred.  When the determination was made that Deputy Hall did not have jurisdiction of the crime, he released Petitioner from detention and, as the state court found, Petitioner voluntarily entered the State of Florida.  The record supports the state court's determination that Petitioner voluntarily crossed the border from Alabama to Florida at a time when Petitioner was not in custody of either State; therefore, the provisions of the Extradition Act were not triggered.  Because Petitioner failed to demonstrate a reasonable probability that the trial court

would have suppressed Petitioner's statements to law enforcement on the ground that Alabama authorities violated the Extradition Act, the state court's denial of Petitioner's ineffective assistance of counsel claim was not unreasonable.  Accordingly, Petitioner is not entitled to relief on this claim.

        B.    <u>Ground two: "Counsel ineffective by failing to investigate and depose deputy and call deputy to show detective initiated contact in violation of Miranda."</u>

(Doc. 1 at 4).  Petitioner claims that his trial counsel performed deficiently by failing to depose Officer Johnson and present his testimony at the suppression hearing to show that Deputy Russ unlawfully initiated contact with Petitioner and obtained a statement from him after Petitioner invoked his right to counsel (*id.*).

        1.    Clearly Established Federal Law

The standard governing claims of ineffective assistance of counsel is set forth *supra*.

        2.    Federal Review of State Court Decision

Petitioner raised this claim as his second ground for relief in his Rule 3.850 motion (Doc. 12, Ex. J at 10–12).  As previously noted, the state court's written opinion identified the <u>Strickland</u> standard as the applicable standard for evaluating claims of ineffective assistance of counsel (*id.* at 41); therefore, Petitioner is entitled to federal relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of <u>Strickland</u>.

Following the evidentiary hearing, the state court made the following factual findings:  (1) Petitioner testified that Officer Russ initiated contact with him on the day Petitioner gave a written statement; (2) Petitioner testified that he gave his trial counsel the name of Officer Johnson one hour before the hearing on the motion to suppress the statement; (3) Petitioner's trial counsel testified that he had no recollection of Petitioner giving him Officer Johnson's name, and (4) the testimony of trial counsel that he had no knowledge of Officer Johnson as a potential witness was more credible than Petitioner's testimony on this issue (*id.*).  Based upon the finding that trial counsel had no knowledge of Officer Johnson as a potential witness, the state court concluded that counsel was not ineffective for failing to investigate Johnson's knowledge of the circumstances surrounding the statement (*id.*).

It is undisputed that prior to Petitioner's trial, his counsel sought suppression of Petitioner's statement to Deputy Russ.  It is also undisputed that the night prior to giving the statement to Deputy Russ, Petitioner exercised his right to consult counsel before making any statements to authorities.

At the evidentiary hearing on Petitioner's post-conviction motion, Petitioner testified that the day after he invoked his right to counsel and told Deputy Russ that he would not speak to him, Deputy Russ initiated contact with him, and Petitioner gave him a recorded statement (Doc. 12, Ex. J at 70–71).  Petitioner testified that Greg Johnson was the booking officer on duty at the jail when Russ initiated contact with him (Petitioner) (*id*. at 72).  According to Petitioner, Officer Johnson was sitting at the booking desk and could physically see and hear contact between Petitioner and Russ (*id*.).  Petitioner testified that he told Mr. Roberts, his trial counsel, that Johnson was the booking officer who was working the day Petitioner gave his statement (*id*.).  When Petitioner was asked when he told Mr. Roberts about Officer Johnson, Petitioner answered, "I think before the [suppression] hearing . . . . Probably about an hour before my suppression hearing" (*id*. at 73).  When asked what Attorney Roberts' response was to this information, Petitioner responded, "Nothing." (*id*.).  Petitioner testified that he and Deputy Russ testified at the suppression hearing (*id*. at 74).  On cross-examination, Petitioner testified that he did not give his counsel the name of Greg Johnson (*id*. at 79).

Petitioner's trial counsel, Mr. Roberts, testified that the basis of the motion to suppress was that Deputy Russ improperly initiated contact with Petitioner after he had invoked his right to remain silent (Doc. 12, Ex. J at 87–88).  Attorney Roberts testified that Deputy Russ testified at the suppression hearing that Petitioner requested to speak to him, and the court believed Russ' testimony (*id*. at 88).  Counsel further testified that Petitioner never gave him the name of the booking officer and never informed him that there was an officer or anyone else who could corroborate Petitioner's statement that Deputy Russ initiated contact with him (*id*. at 88–89, 95).  Counsel testified that he never had any reason to believe that there may have been an officer that could have overheard the conversation of an officer and an inmate at the cell door, which is where the contact between Russ and Petitioner occurred (*id*. at 89–90).  Counsel further testified that based upon his experience of interviewing clients at the jail, there was sometimes a booking officer in the area of the cell door, but more likely than not, there would not be anyone there (*id*. at 90).  Counsel testified that if he had

known or if Petitioner had told him there was a witness that could corroborate Petitioner's version of the circumstances surrounding his statement to Deputy Russ, he (counsel) would have subpoenaed that witness, but he did not know, nor did Petitioner tell him, about a potential witness (*id*. at 95).

Initially, Petitioner has failed to provide clear and convincing evidence to rebut the state court's finding that Attorney Roberts had no knowledge of Officer Johnson as a potential witness on the issue of whether Petitioner or Deputy Russ initiated the contact that led to Petitioner's statement; therefore, this finding is presumed correct. Furthermore, although Petitioner suggests that Officer Johnson would have testified that Deputy Russ initiated contact with Petitioner, Petitioner failed to provide this court or the state post-conviction court with any factual support for his assertion as to the substance of Officer Johnson's testimony. In light of the state court's factual finding and the fact that Petitioner has offered nothing but speculation to support his assertion as to the content of Officer Johnson's testimony, Petitioner has failed to show a reasonable probability that the outcome of the suppression hearing would have been different if counsel had called Officer Johnson as a witness. Therefore, the state court's denial of Petitioner's claim was not unreasonable.

     C.     Ground three: "Counsel ineffective during Petitioner's cross-examination by stopping State from committing reversable [sic] error of Miranda prejudiced [sic] defense."

(Doc. 1 at 5). Petitioner claims that his trial counsel performed in a deficient manner by requesting a bench conference during the State's cross-examination of Petitioner at trial, during which Petitioner's counsel told the trial judge, "He's about to blurt out that he exercised his right to counsel." (*id.*). Petitioner contends that his counsel precluded the jury from knowing that Petitioner invoked his right to counsel (*id.*).

Respondent contends that Petitioner failed to exhaust this claim in the state courts because he abandoned it at the evidentiary hearing; therefore, the claim is procedurally barred from federal review (Doc. 21 at 17–18).

The state court record establishes that Petitioner raised this claim as his third ground for relief in his Rule 3.850 motion (Doc. 12, Ex. J at 13–14). At the evidentiary hearing on the motion, Petitioner's post-conviction counsel announced that he had discussed the issue with Petitioner, and Petitioner agreed that the claim was without merit and should be abandoned:

MR. MERCER [Petitioner's counsel]:  The third issue that he [Petitioner] raises in his motion is ineffective assistance of counsel for objecting to State's questioning of one of the officers.[7]  At some point during the trial, and I read the whole transcript, Mr. Adkison, the prosecutor, was questioning one of the police officers and Mr. Roberts was concerned that they were about to blurt out some testimony to the effect that he [Petitioner] invoked his right to an attorney.  Mr. Roberts objected, said, "Your Honor, may we approach the bench?"  At the approach of the bench, and for the record, Judge, I'll tell you where the testimony takes place in the transcript so the record is clear, but when they approached the bench Mr. Roberts, you know, Mr. Roberts said, "Judge, I am concerned that Mr. Adkison is about to cause a mistrial, I don't want that to happen."

For the record, it is Volume Number 3, page 243.  The court has a discussion with the prosecutor and defense attorney and said, "Don't ask him a question that's going to require him to answer he invoked his right to counsel, I don't want a mistrial."

In his Rule 3.850 Mr. Young complains about Mr. Roberts' action.  I have discussed that with Mr. Young and explained to Mr. Young that preventing a mistrial and preventing the State from commenting on your right to remain silent is not something that Mr. Roberts would be ineffective in doing.  It's a proper action for an officer of the court to attempt to stop a mistrial from occurring.  Based upon that and my conversation with Mr. Young, my understanding is he wishes to abandon count 3 or claim number 3 of his motion; is that correct, Mr. Young?

THE DEFENDANT:  Go ahead.

MR MERCER [Petitioner's counsel]:  That issue is gone.

THE COURT:  Mr. Young, you said, "Go ahead."  By that you meant that the claim should be abandon[ed]?

THE DEFENDANT:  Yes, sir.

(Doc. 12, Ex. J at 60–61).  After Petitioner's post-conviction counsel summarized the issues upon which they were proceeding, which did not include the issue of trial counsel's precluding the jury from hearing evidence that Petitioner exercised his right to remain silent, the post-conviction court asked Petitioner if he heard his counsel's representation of the issues and agreed with the

---

[7]Petitioner's post-conviction counsel misspoke when he stated that the alleged error of trial counsel occurred during the State's examination of an officer.  The alleged error occurred during the State's cross-examination of Petitioner, as post-conviction counsel's subsequent reference to the trial transcript shows.

representation, and Petitioner responded, "Yes, sir." (*id*. at 63–64).  In the written decision on Petitioner's Rule 3.850 motion, the court disposed of this issue with the following statement, "The third claim of ineffective assistance of counsel as sef [sic] forth in the defendant's motion was abandoned at the hearing of this matter." (*id*. at 41).  Thus, the state court record establishes that Petitioner abandoned his claim at the evidentiary hearing.

Additionally, although Petitioner pursued an appeal of the denial of his Rule 3.850 motion, he raised only the following claim:

> Trial court at evidentiary hearing abused it's [sic] discretion in denying appellant's Rule 3.850 motion for postconviction relief under ineffective assistance of counsel where appellant was not advised of his constitutional rights in connection with the Uniformed [sic] Extradition Act before being brought back to Florida without written waiver executed before judge or magistrate and where State of Alabama law enforcement officer obtained confesion [sic] or statement made by appellant while in a custodial arrangement before and after being turned over to Florida was inadmissible on his claim counsel failed to investigate extradition proceeding and suppression of confession or statement.

(Doc. 12, Ex. L at 7).  Petitioner acknowledged in his appellate brief that his post-conviction counsel abandoned the claim regarding trial counsel's precluding the jury from hearing evidence that Petitioner invoked his right to counsel (*id*. at 1).  Given that Petitioner's post-conviction appeal was from a Rule 3.850 decision following an evidentiary hearing, Petitioner was obliged to file an initial brief upon appeal of the denial of post-conviction relief.  *See* Fla. R. App. P. 9.141(b)(3).  His decision to pursue only one claim on appeal operated to waive and abandon the remaining claims raised in his underlying post-conviction motion.

As discussed *supra*, claims that are not exhausted in the state courts but would clearly be barred if Petitioner attempted to return to state court must be dismissed.  *See* Coleman, 501 U.S. at 735; Tower, 7 F.3d at 210.  In the instant case, it would be futile to dismiss Petitioner's claim to afford him an opportunity to exhaust it because the claim could have and should have been litigated in the post-conviction proceeding before the trial court, as well as on appeal.  *See* Fla. R. Crim. P. 3.850(f).  Thus, the claim is procedurally barred from federal review unless Petitioner shows cause for and actual prejudice from the procedural default, or that a fundamental miscarriage of justice will result.  Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); Bailey, 172 F.3d 1299; Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).  To establish "cause" sufficient

to overcome the procedural bar, Petitioner must show the existence of "an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim" which prevented him from raising the claim.  McCleskey, 499 U.S. at 497 (quoting Murray, 477 U.S. at 488).  In order to show prejudice, Petitioner must show not merely that the error created a possibility of prejudice, but that it worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions.  See United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596, 71 L. Ed. 2d 816 (1982).

In the instant case, Petitioner does not allege cause for his failure to pursue the claim in the state courts; however, he asserts that trial counsel's error "establishes a fundamental miscarriage of justice occurred" (Doc. 26 at 15).  Petitioner assertion, however, goes to the legal sufficiency of his conviction rather than his factual innocence.  Because Petitioner has failed to make a colorable showing that he is actually innocent of the crime by coming forward with new evidence to support his petition, he is not entitled to federal review under the fundamental miscarriage of justice exception to the procedural bar.  See Johnson v. Ala., 256 F.3d 1156, 1171–72 (11th Cir. 2001).

D.    Ground four:  "Counsel ineffective by failing to object contemporaneously to portion of taped confession being precluded from jury where he invoked Miranda."

(Doc. 1 at 5).  Petitioner claims that his trial counsel provided ineffective assistance by permitting a portion of Petitioner's recorded confession to be withheld from the jury, specifically, the portion in which Deputy Russ, the officer who obtained Petitioner's statement, references the fact that Petitioner previously invoked his right to counsel and subsequently decided to waive that right (id.).  Petitioner contends counsel's error precluded the jury from determining whether Petitioner confession was involuntary (id.).

Respondent concedes that Petitioner exhausted this claim by presenting it in his state post-conviction motion and appealing the trial court's denial of the motion (Doc. 21 at 19).[8]

1.    Clearly Established Federal Law

The standard governing claims of ineffective assistance of counsel is set forth supra.

---

[8]Although it does not appear that Petitioner raised this claim in his initial brief on appeal of the denial of his Rules 3.850 motion (see Doc. 12, Ex. L), Respondent expressly waived the exhaustion defense as to this claim. Therefore, this court must address the merits.

       2.          Federal Review of State Court Decision

Petitioner raised this claim as his fourth ground for relief in his Rule 3.850 motion (Doc. 12, Ex. J at 15–12).  As previously noted, the state court's written opinion identified the <u>Strickland</u> standard as the applicable standard for evaluating claims of ineffective assistance of counsel (*id*. at 41); therefore, Petitioner is entitled to federal relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of <u>Strickland</u>.

Following the evidentiary hearing, the state court made the following factual findings:  (1) the jury was not allowed to hear the portion of the taped confession wherein Petitioner acknowledged that he had previously requested to speak with an attorney before talking with Officer Russ about the case; (2) Petitioner's trial counsel testified that he felt if the jury heard that Petitioner had previously refused to talk with the officer without an attorney, they might infer that Petitioner had something to hide, and (3) trial counsel's decision was a strategic decision (Doc. 12, Ex. J at 41–42).

During Deputy Russ' testimony at Petitioner's trial, the prosecutor requested a recess prior to publishing the audiotape of Petitioner's confession to Deputy Russ, and the prosecutor made the following request to redact the portion of the audiotape in which Deputy Russ referred to Petitioner's previous invocation of his right to counsel:

> MR. ADKISON [the prosecutor]:  Your Honor, the state is ready to proceed but the one reason what [sic] we was [sic] trying to get, there was some concern on the defense part, which I understand, about this officer commenting on Mr. Young's right to remain silent from the previous statement.  I would like to put on the record because of that reason and also because of the prior objection this should not come in.  Exactly what we are going to take out and not play to the jury if that would be okay with the Court.
>
> THE COURT:  All right.
>
> MR ADKISON:  I will just read it into the record.  "This is Officer Steve Russ, Holmes County Sheriff's Department to be conducting a taped statement of Anthony Young, date of birth 7/13/82, Case Number 00-12-5961, today's date is 12/3/2000, time is 12:38 p.m.
>
> . . . .

> RUSS:  Okay, Anthony, I'm gonna read your rights to you. .
> . . [whereupon Petitioner was advised of his rights under <u>Miranda v.</u>
> <u>Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).]  Do
> you understand each of these rights that I've explained to you?
>
> YOUNG:  Yes, sir.
>
> RUSS:  Have you previously requested any law enforcement
> officer to allow you to speak to an attorney?
>
> YOUNG:  No, sir.
>
> RUSS:  I talked to you last night.  You did request an
> attorney, right?
>
> YOUNG:  Yes, sir.
>
> RUSS:  Okay.  You want to speak to me today though,
> correct?
>
> YOUNG:  Yes, sir."

> MR. ADKISON:  That is the part we are going to take out and from there,
> Judge, we are going to publish that to the jury.  I don't think—that is without
> objection from the defense.
>
> THE COURT:  Mr. Roberts, do you have any—
>
> MR. ROBERTS:  Other than previously noted I have no objection.
>
> THE COURT:  So, at this point you don't have any problems with redacting
> that part of the statement?
>
> MR. ROBERTS:  No, sir, because I think if you didn't redact it then I think
> you would have to declare a mistrial.

(Doc. 12, Ex. C at 183–85).

At the evidentiary hearing on Petitioner's Rule 3.850 motion, Mr. Roberts testified that the

basis for his permitting the redaction of Petitioner's statement was the following:

> The reason for the rule is that you don't want to poison the jury's mind that
> this man asked for a lawyer.  If he asked for a lawyer, he must be guilty.  That's the
> reason that you can never mention to a jury that he requested a lawyer because it

causes a mistrial immediately.  I felt like that if the deputy couldn't say on the stand, which certainly he should not say on the stand, that he initially invoked his right to an attorney that should not be in a statement because that particular portion of the statement could poison the jury's mind that he did, he asked for a lawyer.

(Doc. 12, Ex. J at 90).

The Strickland court recognized that "[e]ven the best criminal defense attorneys would not defend the same petitioner in the same way."  466 U.S. at 689.  Matters of trial strategy and tactics, unless plainly not within the bounds of reasonableness, and even if unsuccessful, do not constitute ineffective assistance.  Bell v. Evatt, 72 F.2d 421 (4th Cir. 1995).

> Trying cases is no exact science.  And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that calls for great precision or for a categorical approach.  When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate."  Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992).  And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy."  Devier v. Zant, 3 F. 3d 1445, 1450 (11th Cir. 1993).  Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances would have done so.

Rogers v. Zant, 13 F. 3d 384, 386 (11th Cir. 1994); Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish no competent counsel would have taken the action that his counsel did take).

But not every strategic decision passes constitutional muster.  Whether a particular decision by counsel was a tactical one is a question of fact, Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness. See 28 U.S.C. § 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, Hardwick 320 F.3d at 1163; Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462.  In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

In the instant case, the state court found as fact that trial counsel's decision not to object to the redaction was a tactical decision.  Petitioner has failed to rebut this factual finding with clear and convincing evidence to the contrary; therefore, the finding is presumed correct.  The only remaining issue is whether counsel's tactical decision was reasonable.

It is well established that the Due Process Clause bars the use for impeachment purposes of a defendant's post-arrest silence.  Doyle v. Ohio, 426 U.S. 610, 619, 96 S. Ct. 2240, 2245, 49 L. Ed. 2d 91 (1976)).  While acknowledging that the Miranda warnings contain no express assurance that silence will carry no penalty," the Court concluded that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."  Id., 426 U.S. at 618.  The Eleventh Circuit has extended Doyle to the context of prosecutorial comments made during the State's case in chief.  See Sullivan v. State of Alabama, 666 F.2d 478, 484–85 (11th Cir. 1982) (citing Chapman v. United States, 547 F.2d 1240, 1242 (5th Cir. 1977)).

In this case, trial counsel's reason for deciding to suppress the references to Petitioner's invocation of his Miranda rights was sound and in accordance with federal law.  Therefore, Petitioner failed to establish that counsel performed deficiently by allowing the reference to be redacted from Petitioner's confession.  Accordingly, the state court decision denying this claim was not unreasonable.

      E.      Ground five: "Whether trial court illegally imposed Defendant's ten year mandatory sentence."

(Doc. 1 at 5, attached page).  Petitioner claims that the trial court violated his rights to due process and trial by jury by imposing a mandatory ten year sentence based upon Petitioner's possession of a firearm, but the charging document did not charge him with possession, rather it charged him with using or threatening to use a firearm, and the jury verdict found him guilty of "Sexual Battery with a Firearm, as charged" (Doc. 1 at 5, attached page; Doc. 26 at 18; see Doc. 12, Exs. A, B).

Respondent contends that although Petitioner challenged the mandatory sentence in his direct appeal, his mere reference to the Fifth, Sixth, and Fourteenth Amendments was insufficient to fairly apprise the state court of the federal nature of his claim (Doc. 21 at 21–22).  Furthermore, because the claim was not exhausted in the state courts, it is procedurally barred from federal review (id.).

Regardless of whether Petitioner exhausted this claim in the state courts, his claim is without merit.[9] Petitioner essentially claims that imposition of the mandatory minimum sentence constituted constitutional error under Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) or Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).  In Apprendi, the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  In Blakely, the Supreme Court held that the state trial court's sentencing of s defendant to more than three years above the 53-month statutory maximum of the standard range for his offense, on the basis of the sentencing judge's finding that the defendant acted with deliberate cruelty, violated the defendant's Sixth Amendment right to trial by jury.  542 U.S. at 303–04.

In the instant case, Petitioner challenges the mandatory sentence he received for the fact that he possessed a firearm during commission of the offense.  Petitioner was charged with sexual battery with a firearm in violation of Florida Statutes section 794.011(3) (Doc. 12, Ex. A).  That statute provides, in relevant part, "A person who commits sexual battery upon a person 12 years of age or older, without that person's consent, and in the process thereof uses or threatens to use a deadly weapon . . . commits a life felony, punishable as provided in § 775.082 . . . ."  Fla. Stat. § 794.011(3).  At the time Petitioner committed this crime, the statutory maximum sentence for a life felony was life imprisonment.  See Fla. Stat. § 775.082(3)(a)3.  Petitioner was sentenced to ten years.  Because Petitioner was sentenced to less than the statutory maximum, his sentence did not constitute constitutional error under Apprendi or Blakely.  See Harris v. Untied States, 536 U.S. 545, 567, 122 S. Ct. 2406, 2419, 153 L. Ed. 2d 524 (2002) (holding that an increase in the mandatory minimum sentence based on judicial fact-finding does not evade the requirements of the Fifth and Sixth Amendments and reaffirming McMillan v. Pennsylvania, 477 U.S. 79, 106 S. Ct. 2411, 91 L .Ed. 2d 67 (1986)); Spero v. United States, 375 F.3d 1285, 1286 (11th Cir. 2004) (neither Blakely nor Apprendi undermined the validity of minimum mandatory sentences, at least not where the

[9]The court may deny an application for writ of habeas corpus on the merits notwithstanding Petitioner's failure to exhaust his state court remedies.  28 U.S.C. § 2254(b)(2).

enhanced minimum does not exceed the non-enhanced maximum).  Therefore, Petitioner is not entitled to federal habeas relief on this claim.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 6<u>th</u> day of June 2007.


<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**